IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:   C. R. BARD, INC.,
         PELVIC REPAIR SYSTEM
         PRODUCTS LIABILITY LITIGATION                    MDL No. 2187

THIS DOCUMENT RELATES TO:

*Thomas v. C. R. Bard, Inc.*                    Civil Action No. 2:16-cv-11914

MEMORANDUM OPINION & ORDER

Pending before the court is the Defendant's Motion to Dismiss with Prejudice or in the Alternative Motion for Show Cause Order for Failure to Serve a Plaintiff Fact Sheet [ECF No. 10] filed by C. R. Bard, Inc. ("Bard"). The plaintiff has not responded, and the deadline for responding has expired. Thus, this matter is ripe for my review. For the reasons stated below, the Motion is **DENIED without prejudice**.

I.   **Background**

The case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the six remaining active MDLs, there are nearly 17,000 cases currently pending, approximately 1600 of which are in the Bard MDL, MDL 2187.

In an effort to efficiently and effectively manage this MDL, the court decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all summary judgment

motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, the court placed this and other cases in Bard Wave 7. Pretrial Order ("PTO") # 275 [ECF No. 5124], *In re: C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10-md-02187, http://www.wvsd.uscourts.gov/MDL/2187/orders.html.

Managing multidistrict litigation requires the court to streamline certain litigation procedures in order to improve efficiency for the parties and the court. Some of these management techniques simplify the parties' discovery responsibilities. PTO # 275, for example, provides that each plaintiff in Wave 7 must submit a completed Plaintiff Fact Sheet ("PFS") to defendants by March 19, 2018. PTO # 275, at 2. The plaintiff, however, did not comply with PTO # 275 in that she failed to submit a completed PFS, and on this basis, Bard now seeks dismissal of her case with prejudice.

## II.    Legal Standard

Federal Rule of Civil Procedure 37(b)(2) allows a court to sanction a party for failing to comply with discovery orders. *See* Fed. R. Civ. P. 37(b)(2) (stating that a court "may issue further just orders" when a party "fails to obey an order to provide or permit discovery"). Before levying a harsh sanction under Rule 37, such as dismissal or default, a court must first consider the following four factors identified by the Fourth Circuit Court of Appeals:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the

2

> need for deterrence of the particular sort of noncompliance;
> and (4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)).

In applying these factors to the case at bar, I must be particularly cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces. Specifically, when handling seven MDLs, containing thousands of individual cases in the aggregate, case management becomes of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1231–32. Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine

3

that drives disposition on the merits." *Id.* at 1232. And a "willingness to resort to sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

## III.   Discussion

Pursuant to PTO # 275, each plaintiff in Wave 7 was ordered to complete and serve a PFS on defendants by March 19, 2018. PTO # 275, at 2. According to Bard, the plaintiff failed to submit a completed PFS within the court-ordered deadline. Accordingly, pursuant to PTO # 275, Bard now moves for dismissal of the plaintiff's case with prejudice.

Applying the *Wilson* factors to these facts and bearing in mind the unique context of multidistrict litigation, I conclude that although recourse under Rule 37 is justified, the plaintiff should be afforded one more chance to comply with discovery before further sanctions are imposed.

The first factor, bad faith, is difficult to ascertain, given that the plaintiff has not responded. This indicates a failing on the part of the plaintiff, who has an obligation to provide counsel with any information needed to prosecute her case. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962) ("[A] civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the

4

prosecution of his lawsuit."). Furthermore, as set forth in PTO # 3, "[a]ll attorneys representing parties to this litigation . . . bear the responsibility to represent their individual client or clients." PTO # 3, at ¶ F [ECF No. 22], *In re: C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10-md-02187, http://www.wvsd.uscourts.gov/MDL/2187/orders.html. This includes awareness of and good faith attempts at compliance with all PTOs and other court orders. PTO # 9, which was jointly drafted by the leadership counsel of both parties, expressly states that any plaintiff who fails to comply with PFS obligations may, for good cause shown, be subject to sanctions. PTO # 9, at ¶ 1(g) [ECF No. 56], *In re: C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10-md-02187, http://www.wvsd.uscourts.gov/MDL/2187/orders.html. The plaintiff nevertheless failed to comply. Although this failure does not appear to be callous, the fact that it was blatant and in full knowledge of the court's orders and discovery deadlines leads me to weigh the first factor against the plaintiff. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("While not contumacious, perhaps, this is a blatant disregard for the deadlines and procedure imposed by the court, [and t]herefore, we conclude that the [plaintiffs] did not act in good faith.").

The second factor—prejudice caused by noncompliance—also leans toward the order of sanctions. Without a PFS, defendants are "unable to mount its defense because it [has] no information about the plaintiff or the plaintiff's injuries outside the allegations of the complaint." *In re Phenylpropanolamine*, 460 F.3d at 1234.

Furthermore, because Bard has had to divert attention away from timely plaintiffs and onto this case, the delay has unfairly impacted the progress of the remaining plaintiffs in MDL 2187.

The adverse effect on the management of the MDL as a whole segues to the third factor, the need to deter this sort of noncompliance. When parties fail to comply with deadlines provided in pretrial orders, a domino effect develops, resulting in the disruption of other MDL cases. From the representations of Bard's counsel, a considerable number of plaintiffs have failed to supply a timely PFS. Consequently, the court expects to have to evaluate and dispose of a significant number of motions similar to the one at bar, thereby directing its time and resources to noncompliant plaintiffs at the expense of other plaintiffs in this MDL. This cumbersome pattern goes against the purpose of MDL procedure, and I must deter any behavior that would allow it to continue. *See* H.R. Rep. No. 90-1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases).

Application of the first three factors demonstrates that this court is justified in sanctioning the plaintiff. However, application of the fourth factor—the effectiveness of less drastic sanctions—counsels against the relief sought by Bard. Rather than imposing harsh sanctions at this time, the court opts for a lesser sanction and allows the plaintiff one more chance to comply, subject to dismissal, upon motion by the defendant, if she fails to do so. This course of action is consistent with PTO # 9, which

warned plaintiffs of the possibility of dismissal upon failure to submit a timely PFS. *See* PTO # 9, at ¶ 1(g).

Alternative lesser sanctions, such as the ones proposed in Rule 37(b)(2)(i)–(iv), are simply impracticable, and therefore ineffective, in the context of an MDL containing approximately 1600 cases. The court cannot spare its already limited resources enforcing and monitoring sanctions that are qualified by the individual circumstances of each case, nor would it be fair for the court to place this responsibility on defendants. Therefore, considering the administrative and economic realities of multidistrict litigation, I conclude that affording the plaintiff a final chance to comply with discovery, subject to dismissal if she fails to do so, is a "just order" under Rule 37 and in line with the Federal Rules of Civil Procedure as a whole. *See* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

## IV.  Conclusion

It is **ORDERED** that the Defendant's Motion to Dismiss with Prejudice or in the Alternative Motion for Show Cause Order for Failure to Serve a Plaintiff Fact Sheet [ECF No. 10] is **DENIED without prejudice**. It is further **ORDERED** that the plaintiff must serve her completed PFS on Bard on or before **July 13, 2018**. Failure to comply with this Order may result in dismissal with prejudice upon motion by Bard. Finally, it is **ORDERED** that plaintiff's counsel send a copy of this Order to the plaintiff via certified mail, return receipt requested, and file a copy of the receipt.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        June 12, 2018

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE